**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

JILL D.,

                      Plaintiff,                          No. 5:17-CV-1308
                                                            (CFH)

        v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                      Defendant.

_____

**APPEARANCES:**                               **OF COUNSEL:**

Olinsky Law Group                     HOWARD D. OLINSKY, ESQ.
300 South State Street, Suite 420
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration         PETER W. JEWETT, ESQ.
Office of Regional General Counsel    Special Assistant U.S. Attorney
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Jill D. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of

a decision by the Commissioner of Social Security ("Commissioner") denying her

application for disability insurance benefits and supplemental security income ("SSI")

payments.  Dkt. No. 1 ("Compl.").[1]  Plaintiff moves for a finding of disability or remand

_____

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fᴇᴅ. R. Cɪᴠ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 5.

for a further hearing, and the Commissioner moves for judgment on the pleadings.  Dkt. Nos. 9, 10.  For the following reasons, plaintiff's motion denied, and the Commissioner's motion is granted.

## I. Relevant Background

### A. Factual Background

At the time of the hearing, plaintiff was a thirty-three year old female who lived at home with her four children.  T. 32, 45.[2]  Plaintiff previously worked as a cashier at a meat market, as an aide at Arise Child and Family Services, and at a residential home. Id. at 34, 36, 38.

### B. Procedural Background

On September 9, 2014, plaintiff protectively filed an Title II application for a period of disability and disability insurance benefits.  T. 178-84.  That same day, plaintiff also protectively filed a Title XVI application for SSI.  Id. at 185-91.  Plaintiff's applications were initially denied on October 24, 2014.  Id. at 98.  Plaintiff requested a hearing, and a video hearing was held on July 28, 2016 before Administrative Law Judge ("ALJ") Julia D. Gibbs.  Id. at 31-61, 106-07.  ALJ Gibbs determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from May 1, 2011, through the date of this decision."  Id. at 10.  The Appeals Council denied

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-5.  Plaintiff commenced this action on November 30, 2017.  See Compl.

### C. ALJ Decision

Applying the five-step disability analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since May 1, 2011, the alleged onset dated.  T. 12.  The ALJ found at step two that plaintiff had the severe impairments of left knee pain status post-surgery; bilateral ankle disorder; and rheumatoid arthritis.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 14.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to lifting no more than 10 pounds.  The claimant must avoid climbing and no more than occasional balancing, stooping, kneeling, crouching, and crawling.  The claimant needs a position that can be done sitting or standing and that allows alternating between the two positions without leaving the worksite or stopping work activity.  The claimant is also precluded from assembly line type work.

Id.  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  Id. at 19.  At step five, the ALJ determined that, after consulting with a vocational expert, and considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could

perform.  Id.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from May 1, 2011, through the date of this decision."  Id. at 20.

## II. Legal Standard

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably

4

supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence,

such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may

differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

1992) (citation omitted).


**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . .

benefit   . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be available

to him or her based on his or her age, education, and work experience.  Id. §

423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical

and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the

impairments is "based [upon] objective medical facts, diagnoses or medical opinions

inferable from the facts, subjective complaints of pain or disability, and educational

background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB),

2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### III. The Parties' Arguments

Plaintiff argues that the ALJ's weighing of opinion evidence is not supported by substantial evidence. Dkt. No. 9 at 10-16. Conversely, the Commissioner argues that the ALJ correctly weighed the medical evidence, and that the ALJ's decision should be affirmed. Dkt. No. 10 at 5-12.

### IV. Analysis

#### A. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much

weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from

both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'"  Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to lifting no more than 10 pounds.  The claimant must avoid climbing and no more than occasional balancing, stooping, kneeling, crouching, and crawling.  The claimant needs a position that can be done sitting or standing and that allows alternating between the two positions without leaving the worksite or stopping work activity. The claimant is also precluded from assembly line type work.

9

T. 14.  The regulations define sedentary work as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).


## 1. Relevant Medical Evidence

Plaintiff underwent a consultative internal medicine examination with Dr. Kalyani Ganesh on October 7, 2014.  Dr. Ganesh noted that plaintiff appeared to be in no acute distress, and had a mild limp favoring the left.  T. 463.  She could not walk on her heels and toes or squat.  Id.  Plaintiff's stance was normal, but Dr. Ganesh noted a prominent left lateral malleolus.  Id.  Plaintiff did not use assistive devices, and did not need help changing for the examination or getting on and off the examination table.  Id.  Plaintiff was able to rise from her chair without difficulty.  Id.

Dr. Ganesh assessed that plaintiff's cervical spine and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  T. 464. She had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally. Id.  Her hip flexion was ninety degrees, right backward extension full and left twenty degrees, interior, exterior, and abduction full.  Id.  Plaintiff had full range of motion in her right knee, and her left knee had ninety degrees flexion.  Id.  Dr. Ganesh noted that

plaintiff's upper extremity was 5/5. right lower extremity 5/5, and left lower extremity 4/5. Id. Dr. Ganesh diagnosed plaintiff with status post left knee surgery for ACL and torn meniscus and a history of club feet. Id. Dr. Ganesh opined "[n]o limitations with sitting, standing and the use of upper extremities. Mild limitations with walking and climbing." Id. at 465. Plaintiff's prognosis "[a]t this time appear[ed] to be stable." Id. at 464.

In December 2014, plaintiff's primary care provider Dr. Margaret A. Sennett completed a medical source statement regarding her treatment of plaintiff. Dr. Sennett indicated that she had been treating plaintiff every two to six months since 2009. T. 473. She diagnosed plaintiff with arthropathy of the knee and rheumatoid arthritis. Id. She opined that plaintiff could sit for thirty minutes at one time before needing to stand up, and stand for fifteen minutes at one time before needing to sit up. Id. Dr. Sennett indicated that plaintiff could sit for about four hours total in an eight-hour workday, and stand/walk for about two hours total. Id. at 474. She indicated that plaintiff could rarely lift less than ten pounds, and never lift ten pounds or more. Id. Plaintiff could rarely twist, stoop/bend, or climb stairs, and never crouch/squat or climb ladders. Id. Dr. Sennett also opined that plaintiff could occasionally grasp and turn twist objects with her hands and perform fine manipulations with her fingers; and rarely reach with her arms. Id. at 474. Dr. Sennett opined that plaintiff needed to take unscheduled breaks every fifteen to thirty minutes, lasting fifteen to twenty minutes during the eight-hour workday. Id. at 475. Plaintiff would be off task more than twenty percent of the workday, and would likely miss about four days of work per month. Id.

In July 2016, plaintiff's rheumatologist Dr. Jianghong Yu completed a medical

source statement. Dr. Yu indicated that she had treated plaintiff every six months since October 2014. T. 596. Dr. Yu diagnosed plaintiff with early rheumatoid arthritis. Id. She indicated that plaintiff had bilateral pain in her hands/fingers and knees/ankles/feet. Id. Dr. Yu described plaintiff's pain as a mild to moderate intermittent ache. Id. at 597. Dr. Yu noted that precipitating factors included changing weather, fatigue, movement/overuse, and cold. Id. Dr. Yu did not assess any other functional limitations.

## 2. Court's Analysis

Plaintiff contends that the ALJ did not give good reasons for granting "little weight" to Dr. Sennett's opinion, and erred by granting more weight to the opinion of the consultative examiner, Dr. Ganesh. See Dkt. No. 9 at 12-16. The Court disagrees. The ALJ adequately summarized the evidence of record, including the various opinions and treatment notes. T. 14-19. The ALJ did not discount plaintiff's "alleged difficulties standing/walking" as she expressly noted that she recognized plaintiff's knee and ankle problems, and noted that plaintiff underwent left ACL reconstruction with a hamstring autograft in October 2011, as well as a left knee arthroscopy and ACL revision in September 2012. T. 15. The ALJ also recognized plaintiff's rheumatoid arthritis diagnosis. Id. However, the ALJ noted that "[t]he medical evidence of record supports a finding for some limitations in the ability to stand/walk for extended periods but the objective physical evidence in this case does not support greater limitations than addressed in the residual functional capacity assessed above." Id.

Although an "'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion' he [or she] remains 'free to choose between properly submitted medical opinions' and to rely on those opinions in reaching his disability determination." Kessler v. Colvin, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (internal citation omitted). Although a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence in the record.  See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  Where the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight.  See Halloran, 362 F.3d at 32-33. The ALJ must, however, properly analyze the reasons that the report is rejected.  See id.  An ALJ may not arbitrarily substitute his or her own judgment for competent medical opinion. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the ALJ provided sufficient reasons for the weight afforded to Dr. Sennett's opinion.  The ALJ granted Dr. Sennett's opinion "little weight" because she opined that plaintiff was disabled, a determination reserved to the Commissioner, and because "there [was] little objective evidence from Dr. Sennett's treatment notes and those of the record to support the significant limitations assessed."  T.18.  The ALJ noted that although Dr. Sennett opined limitations in plaintiff's standing, sitting, and postural movements, Dr. Battagalia had reported a few months prior that there was no explanation for plaintiff's pain and indicated issues with secondary gain.  Id.  The ALJ also found that Dr. Sennett's opinion regarding plaintiff's upper extremities was

inconsistent with other evidence in the record.  Id.

Plaintiff references Dr. Sennett's December 2014 treatment notes, wherein she indicated that plaintiff complained of bilateral ankle pain and swelling, pain in her feet, and rheumatoid arthritis.  T. 516; Dkt. No. 9 as 12.  However, Dr. Sennett noted that plaintiff was in no acute distress, but that she had pain localized to one or more joints and joint stiffness localized to one or more joints.  T. 518.  With regard to her recent rheumatoid arthritis diagnosis, Dr. Sennett indicated that plaintiff should "give the rheumatologists time to try and get her some improvement," and stated that she had not been on medications long enough to judge its efficacy in treating plaintiff's pain symptoms.  Id. at 519.  Dr. Sennett noted that plaintiff had "good cause for optimism." Id.  Although plaintiff is correct in arguing that Dr. Sennett's opinion took into account plaintiff's recent rheumatoid arthritis diagnosis – a diagnosis not known to plaintiff's orthopedic providers – Dr. Sennett's assessment is inconsistent with the restrictive limitations opined that same day when completing her medical source statement.  See id. at 473-75.  Even prior to plaintiff's rheumatoid arthritis diagnosis, objective findings were minimal regarding plaintiff's lower extremities.  Plaintiff's treatment records show "[f]rom an objective standpoint, her knee look[ed] fine" post-surgery, and she had "full passive range of motion and reasonable, although not perfect, stability."  T. 346.

Moreover, Dr. Sennett's restrictive limitations were also inconsistent with Dr. Ganesh's findings.  Although plaintiff was not able to walk on her heels and toes or squat, Dr. Ganesh indicated that she had full range of motion in her right knee and her left knee had ninety degrees flexion.  T. 464.  Her right lower extremity was 5/5 and her

left lower extremity was 4/5.  Id.  The ALJ gave Dr. Ganesh's opinion "some weight . . . to the extent the results of his physical examination support the residual functional capacity assessed and are consistent with the record as a whole."  T. 18.  The ALJ indicated that Dr. Ganesh "noted some reduced range of motion and mild limp when walking, . . . [and that she] continues to report pain and now carries a diagnosis of early rheumatoid arthritis, which supports some additional limitations beyond mild difficulties with walking and climbing[.]"  Id.  Thus, the ALJ considered plaintiff's recent rheumatoid arthritis diagnosis and its potential effect on plaintiff's ability to work in assessing the RFC.  It is well-established that "the ALJ's RFC finding need not track any one medical opinion."  Quinn v. Colvin, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016).  Moreover, "[a]lthough [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir.2013) (summary order) (citing Richardson, 402 U.S. at 399).   As such, it cannot be said that the ALJ erred in failing to adopt every limitation set forth in either Dr. Sennett or Dr. Ganesh's opinions.

    The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'"  Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9

15

(N.D.N.Y. July 29, 2015) (quoting <u>Galiotti v. Astrue</u>, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the numerous opinions of record.

As such, the Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for his analysis.  For the reasons above, the Court therefore finds that the ALJ's RFC determination (including her analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.  Remand is not required on these bases.

## V. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that the plaintiff's motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 26, 2019
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge